KRUZER v. GIANT TIGER STORES, INC.

(No. 910448—Decided April 16, 1974.)

Court of Common Pleas of Cuyahoga County.

*Mr. Roger Stern*, for plaintiff.
*Mr. Richard L. Gunn*, for defendant.

McMONAGLE, J. Plaintiff had been an employee of the defendant for approximately twenty-two years. This is an action in which the court is asked to find and adjudge that the plaintiff is entitled to the benefits for the year 1968 of two funds that were established for the benefit of employees of the defendant. The original phase of the action was one to determine the questions as to liability. A finding by the court for the defendant on this phase would result in a judgment for the defendant. If the court's finding on liability were for the plaintiff, a second phase would be scheduled for a determination of the amount of damages to which the plaintiff was entitled.

In 1961, the defendant joined with other associated corporations in the establishment of a deferred payment employees pension plan, and, also, a deferred payment profit sharing employees retirement plan. It is not disputed that the plaintiff was a participant in and entitled to the benefits

of such plans from 1961 and through the year 1967. Around September, 1968, the plaintiff was removed from the managerial capacity he had occupied with the defendant. At that time his salary was reduced from $25,000 a year to $15,000 a year. He testified that he accepted the reduction in salary and stayed in the employ of the defendant because of the benefits he understood he would be entitled to receive from the pension and profit sharing plans.

On or about December 6, 1968, the plaintiff was advised by the defendant that his services were being terminated. On that day he received his bi-monthly pay check of $453.-73. On December 20, 1968, he received his bi-monthly pay check in the amount of $477.25. On the same date he received another pay check in the amount of $472.25, and he also received a pay check in the amount of $239.30. Defendant's payroll ledger sheet has written on it, with reference to the above payments, "final checks and severance pay." The checks represented the amount of compensation the plaintiff would have been entitled to receive for services through January 4, 1969.

Plaintiff contends that he was entitled to receive the benefits of the plans for the year 1968. Defendant denies such contention, it being its claim that the plaintiff was not "in the employ of" the defendant on December 31, 1968 and that this was a requirement of the plans.

Following are pertinent provisions of the plans which bear upon the dispute herein:

"1.5 'Employee' means a person in the employ of an Employer who is compensated on a salaried basis and/or who is an office employee.

"1.10 'Participant' means an Employee who

"a. Was a participant in the Plan prior to the date of this Amendment, or

"b. On December 31, 1967, is an Employee and on an Employer Anniversary Date (whether in 1967 or in 1968) has been in the continuous service of the Employer for a period of at least six (6) full calendar months (which 6 months include said December 31, 1967, date) or

"c. Was not an Employee on December 31, 1967, but

on his Employer's Anniversary Date after 1967 is an employee and has been in the continuous service of the Employers for a period of at least one (1) full year.

"An employee shall be a participant with respect to a particular employer from whom he receives compensation during its fiscal year if, on its employer's anniversary date he is in the employ of any employer. An active participant is one who has not terminated participation."

Section 3.1 of the Deferred Payment Employees' Pension Plan provides as follows:

"3.1 *Participation in Contribution*—A Participant shall be entitled on an employer's Anniversary Date to have credited to his Participant's Account the amount contributed to the Plan for his account by such Employer for the Employer's Plan Year ending on such Employer's Anniversary Date."

The Third Amendment to the Giant Tiger Pension Plan provides:

"1.4 'Credited Annual Compensation' means the total compensation paid to a Participant from a particular Employer during a Plan Year, except that $4,800 of the aggregate compensation paid to a Participant from all of the Employers during any Plan Year (or the entire amount of such aggregate compensation if the same be less than $4,-800) shall be disregarded in computing Credited Annual Compensation; if a Participant receives compensation from more than one Employer during any Plan Year, the $4,800 to be disregarded shall be allocated among such Employers in proportion to the compensation paid by each to the Participant during such Plan Year. If the number of months for which a Participant received compensation from the Employers during any Plan Year is less than 12 (counting a fraction of a month as a full month), then as to such Participant for such Plan Year the figure $4,800 whereever appearing above shall be changed to that fraction of $4,800 which the number of months for which such Participant received compensation from the Employers during such Plan Year bears to 12.

"2.1 Basis of Employers' Contributions—Each Em-

ployer shall contribute to the Plan for each Plan Year for the account of each Participant to whom such Employer has paid Credited Annual Compensation during such Plan Year, an amount equal to 9.37 ½% of such Credited Annual Compensation.''

The Deferred Payment Profit-Sharing Employes' Retirement Plan provides:

"1.10 Participant means a person who has been in the continuous service of the Employers for a period of at least six, (6) full calendar months on his Employer's Anniversary Date. An Employee shall be a Participant with respect to a particular Employer from whom he receives compensation during its Fiscal Year if, on its Employer's Anniversary Date, he is in the employ of any Employer. An Active Participant is one who has not terminated participation.

"1.4 'Credited Annual Compensation' means the total compensation paid to a Participant from a particular Employer during a Plan Year.

"1.7 'Employer's Anniversary Date' means the last day of the Plan Year while this Plan is in effect with respect to such Employer.

"2.1 Basis—Each Employer shall, prior to the close of its Fiscal Year, determine the basis upon or amount which it will contribute to the Plan with respect to such Fiscal Year out of its current or accumulated profits, and shall take such action as may be appropriate to cause the amounts so determined to be deductible with respect to the Fiscal Year as to which such determination is made.

"3.1 Participation in Contribution—A Participant shall be entitled on Employer's Anniversary Date to share in the contribution made to the Plan by such Employer if he has received from such Employer compensation with respect to the Employer's Plan Year ending on such Employer's Anniversary Date. The share of a Participant in any such contribution shall equal the product of such contribution times the Participant's Allocation Credit for such Plan Year.''

Counsel agree that if the plaintiff was in the employ of the defendant on December 31, 1968, he would have been

entitled to receive the benefits from both plans for the year 1968. The right of the plaintiff to participate in all benefits for the years prior to 1968 is not in dispute herein. The plaintiff has already been paid such benefits. Plaintiff alleges three reasons why he contends that the court should find him to be entitled to participate in the benefits of the plans for the year 1968. These are:

(1) It would be inequitable and contrary to public policy to eliminate plaintiff's right to receive the benefits for the year 1968 when he had worked at full-time employment for eleven months and six days of that year.

(2) That in September, 1968, there was a contractual agreement between the plaintiff and Mr. Baer, president of defendant corporation, that the plaintiff would be retained in the employ of the defendant until after December 31, 1968.

(3) Plaintiff actually was retained in the employ of the defendant until January 4, 1969, being on its payroll and paid through January 4, 1969; that he, therefore, actually was in the employ of the defendant on December 31, 1969.

I. The court accepts neither the contention of the plaintiff that it would be inequitable for the defendant's plan to require that the participant be in the employ of the defendant on a specific date in order that the employee be entitled to the benefits of the plan for that year, nor his assertion that a termination of employment within twenty-four days of the date set forth in the plan should require the court to re-write the pension plan and determine that the plaintiff was either entitled to the benefits for the entire year of 1968, or a proportion thereof.

There was no showing of bad faith or fraud in the discharge of the plaintiff. The discharging of the plaintiff was not done solely for the purpose of depriving him of benefits he would otherwise be entitled to receive for 1968. The vesting features of provisions in a pension plan would be meaningless if a court could arbitrarily change the vesting date for any year. The court, therefore, finds this contention of the plaintiff to be not well taken.

II. The testimony of the plaintiff with reference to his

agreement made with Mr. Baer was not controverted in the evidence. Because of the court's decision with regard to Item No. 3, there is no need for it to determine the existence and breach of a valid agreement between the parties, as contended by the plaintiff. It would appear from the evidence, and as discussed under Item No. 3, that the actions of the defendant either constituted the carrying out of such an agreement, or, regardless of the existence of such an agreement, the plaintiff was kept in the employ of the defendant on and after December 31, 1968, so as to make him eligible for participation in the benefits of the plans for 1968.

III. A decision on item 3 requires the answering of the following question:

Did the action of the defendant in paying the plaintiff the amount of his regular salary through January 4, 1969, constitute the keeping of the plaintiff in the employ of the defendant until such date? or

Did the last three pay checks paid to plaintiff constitute a severance payment unrelated to his wages?

It is impossible to consider or treat these payments as unrelated to the payment of the plaintiff's salary for the periods up to and including January 4, 1969. They were drawn on the payroll account by the defendant and the plaintiff was charged with his social security taxes for such time and the defendant made its contributions for such taxes. Withholding amounts were retained by the defendant for plaintiff's federal and city income taxes for the periods through January 4, 1969.

Extensive research fails to disclose any decisions directly in point. The authorities indicate that if there is a contract (usually in the form of a union agreement) which requires the employer to pay an amount of money on severance of employment, such amount represents monies earned by the employee prior to his termination. If there is no such agreement, the payment is to be considered as compensation paid to an employee for the period following the termination.

Neither of the plans provides for any mandatory sever-

ance pay. There was no employment plan in existence that required such payment. It is not disputed that the plaintiff did no work after December 6, 1968. He was paid through January 4 under a procedure that was identical with that followed by the defendant in payment of his salary. He was paid one-half of the amount equal to his monthly salary twice a month and the withholding taxes, social security, etc., were deducted from his pay. The payment given definitely was not in respect to any past factors.

In *Fazio* v. *Unemployment Comp. Bd. of Review*, 164 Pa. Super. 9, 63 A. 2d 489, headnote 2 of 63 A. 2d states:

"Under unemployment compensation law provision whereby employee does not become unemployed with respect to any week unless he has performed no services during particular week and no remuneration was paid or payable to him with respect to such week, a voluntary dismissal payment constitutes remuneration and employee who receives it does not become unemployed until the end of the period for which it was paid."

On page 11, 63 A. 2d at 490, the court stated:

"On February 3, 1947, the corporation released claimant, because of a change in management, and gave him a check in an amount equivalent to February and March salary, although it was not legally required to make the payment."

On page 12, 63 A. 2d at 491, the court said:

"Consequently, a voluntary dismissal payment is remuneration, and the employee who receives it does not become unemployed until the end of the period for which it was paid."

The above cited case was one involving a claim for unemployment compensation. However, the logic and reason of the court is applicable to the facts in the within case.

There is no question that the employer here intended, as a voluntary act, to maintain the plaintiff on the payroll until after the first of January, and, therefore, he was in the employ of the defendant on the anniversary plan date of the defendant, although he performed no services.

The payments made to the plaintiff after December 6,

1968, were consistent with the plaintiff's contention as to what was agreed upon in September, 1968, by the president of the defendant; *i. e.* "that plaintiff will be kept in the employ of the defendant."

The court finds, therefore, that the plaintiff was entitled to receive, as a participant, a proportion of the contributions to the profit sharing employees retirement plan for the year 1968. He was also entitled to the 9.37½% of his salary over $4,800 that the employer was obliged to contribute to the deferred payment employees pension plan for the year 1968.

*Judgment for plaintiff.*