MARIO FEOLA, APPELLANT, V.
VALMONT INDUSTRIES, INC.,
A NEBRASKA CORPORATION, APPELLEE.

304 N.W.2d 377

Filed April 10, 1981. No. 43157.

Russell S. Daub of Daub, Stehlik & Smith for appellant.

John E. North and Lee H. Hamann of McGrath, North, O'Malley & Kratz, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Mario Feola, plaintiff and appellant herein, filed suit in the District Court of Douglas County to recover the sum of $6,500 allegedly due him under the terms of a certain employee bonus plan maintained by his former employer, Valmont Industries, Inc. (Valmont), for the benefit of certain employees of that company, subject to the fulfillment of specified conditions. Plaintiff was employed by defendant company on or about May 5, 1975, as a marketing manager of the Electrical Products Division, his duties consisting primarily of being a salesman for that division. Feola was informed by his superiors in November of 1976 that his employment would be terminated due to a general work force reduction because of economic conditions. Subsequent to that notification, he remained with the company under the terms of its severance pay policy, the stated purpose of which was "to provide fairly for the separation of exempt and non-exempt salaried employees, being terminated at Company convenience, by providing an equitable severance pay as set forth in this policy"; and pursuant to that plan he was paid 10 weeks of severance pay, and was afforded the opportunity of endeavoring to obtain new employment. This pay continued until February 4, 1977, at which time Feola notified Valmont that he had obtained other employment.

Valmont filed an answer to plaintiff's petition, alleging that Feola was not an eligible participant on its payroll on December 25, 1976, as required by the terms of the bonus plan under consideration. During the pendency of the proceedings prior to trial, both the plaintiff and the defendant filed motions for summary judgment, which were denied by Judge

Richling for the reason that there remained genuine issues of material facts to be determined. At the close of the plaintiff's case-in-chief at the subsequent trial, the defendant renewed its motion for summary judgment and also moved for a directed verdict of dismissal, which motions were sustained by the trial judge, who thereafter dismissed the case and discharged the jury. Plaintiff's motion for a new trial was overruled, and he now appeals to this court.

In view of the fact that a partial trial was had after defendant's motion for summary judgment was overruled, we consider the validity of the actions taken by the trial judge, in this case Judge Gitnick, on the basis of the principles of law applicable to motions for directed verdict. In *Foremost Ins. Co. v. Allied Financial Services, Inc.*, 205 Neb. 153, 286 N.W.2d 740 (1980), we set forth the rule as follows: "It is well settled law in this state that the party against whom a verdict is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. It is only when the facts are conceded, undisputed, or are such that *reasonable* minds can draw but one conclusion therefrom that the trial court must decide the question as a matter of law and not submit it to a jury." See, also, *Novotny v. McClintick*, 206 Neb. 99, 291 N.W.2d 252 (1980); *Woodsmall v. Marijo, Inc.*, 206 Neb. 405, 293 N.W.2d 378 (1980).

In this case a great number of the determinative facts were stipulated between the parties prior to trial, among which were the following:

1. That Mario Feola was employed by Valmont on or about May 5, 1975, under the terms and conditions of a letter from Al Hunt, a personnel representative of Valmont, to Feola dated March 25, 1975. The letter referred to, which was incorporated into the stipulation by reference, after confirming the plaintiff's decision to become employed by Valmont and

setting out the terms of his salary, also provides: "It is our understanding that during your employment with Valmont you will, of course, devote your full time to the interest of Valmont and not be engaged in other commercial pursuits. You shall have the full privilege of terminating your employment with Valmont Industries, Inc. at any time, with or without cause, upon written notice and Valmont shall have the same privilege."

2. During the term of his employment Feola worked as an administrative employee at Valmont.

3. At all pertinent times Valmont had in effect a severance pay policy, No. 274, dated January 1, 1975. A copy of that plan was also incorporated into the stipulation by reference.

4. On December 10, 1976, Tom Whalen (the personnel director for Valmont) sent to Feola a letter enclosing a document entitled "Severance Pay Eligibility Form" to be completed and returned by December 13, 1976. The aforementioned document was returned by Feola, executed by Feola and dated December 10, 1976, and read as follows: "I certify that during the weeks of Nov. 20 - Dec. 3, 1976, and Dec. 6 - Dec. 10, 1976, I have been unable to secure similar employment. I understand that I am receiving severance payments under terms of Policy #274, the contents of which was explained to me on termination. /s/ Mario Feola  Returned to Tom Whalen." Identical forms were executed by Feola between December 10, 1976, and January 31, 1977. The December 10, 1976, letter and Severance Pay Eligibility Form were incorporated into the stipulation by reference.

5. Between November 13, 1976, and February 4, 1977, Feola actively sought alternative employment with other firms. On or about January 31, 1977, Feola was employed by Power Enterprises, Inc., of New Orleans, Louisiana.

6. Plaintiff's base rate of pay at Valmont at the time of his termination was $26,000 per year. For the fiscal

year 1976, the earnings per share were $3.60. If plaintiff was eligible under the terms of the plan and if the court finds that the payment was not a gratuity and defendant was thus legally obligated to pay plaintiff a bonus under the plan, plaintiff is entitled to receive a $6,500 bonus. This statement does not constitute a stipulation as to the merit of the defenses raised by defendant that payment under the plan was a gratuity and that plaintiff was not an eligible administrative employee under the plan.

At this point it will be helpful to examine the two plans in effect at Valmont at all times material to this litigation. The bonus plan involved in this litigation was received in evidence as exhibit 3, and entitled "ADMINISTRATIVE BONUS PLAN — 1976." In general, the plan provides that it is applicable to administrative employees of Valmont, and is effective for the year 1976. It states that the purpose of the plan is to build into the compensation plan for administrative employees a direct financial reason for striving continually for more effective operation of the business. It is further provided that the plan shall be administered by the president of the company, and in applying and interpreting the provisions of the plan, his decision shall be final.

Paragraph V of the plan is as follows, and we quote it in full: "V. ELIGIBILITY FOR PARTICIPATION "All Administrative Employees who are not included under another type incentive plan. Payment will be based upon a time period as a percentage of the total twelve months, with the exception that no one employed after October 1, 1976, will be eligible to receive any bonus under the 1976 Bonus Plan."

Paragraph VII is entitled "AMOUNT OF PAYMENTS," and subsection B thereof provides as follows: "B. Allocation to individual employees is subject to individual appraisal; however, total bonus payout under this Plan will remain the same."

Another very pertinent provision contained in the

plan is paragraph X entitled "SEPARATIONS." That paragraph reads as follows: "Payment will be made only to eligible participants who are on the payroll on December 25, 1976, the end of the fiscal year. However, pro-rata payment will be made to participants retiring during the Plan year and to the estates of participants who die during the Plan year."

Finally, paragraph XI, entitled "REVISION OR DISCONTINUANCE OF THE PLAN," provides as follows:

"This Bonus Plan shall not create any rights of future participation therein of any employee nor limit in any way the right of the Board of Directors to modify or to rescind the Plan in whole or in part. No person eligible to receive any payments shall have any right to pledge, assign, or otherwise dispose of any unpaid portion of such payments.

"In the event that the minimum profit level of $2.85 per share for the Fiscal Year 1976 is not met, no bonus will be paid."

We now set out certain pertinent provisions of Valmont's "Severance Pay Policy" as set forth in exhibit 4 received in evidence at the trial. After reciting that the policy and procedure covers severance pay for exempt and nonexempt salaried employees of Valmont and that its purpose is to add to the employees' feelings of economic security, to provide an alternative to retaining employees in the company in excess positions, and also to minimize public relations damage by separated employees, that document, bearing an effective date of January 1, 1975, specifically states that it is the policy of Valmont to provide fairly for the separation of exempt and nonexempt salaried employees, being terminated at company convenience, by providing an equitable severance pay as set forth in the policy.

Section III E thereof specifically provides: "Severance will be made at what would have been the separated employees regular pay intervals until the

allowance is exhausted; except, however, when the separated employee secures other employment at a similar pay rate, severance payments will cease. The separated employee must certify at receipt of each severance that employment has not been secured." Also, section III I provides: "Determination of severance pay and interpretation of this policy shall be the joint responsibility of the department head and the Director of Personnel."

The evidence is undisputed that Feola was originally employed by Valmont under an oral contract of employment, later confirmed by letter, but that the employment contract was not for any specific period of time, nor was there a termination date specified. That being so, it is clear that his employment, under Nebraska law, was terminable at will, even without reference to the specific provision contained in the letter of confirmation of Feola's employment stating that Feola "shall have the full privilege of terminating your employment with Valmont Industries, Inc. at any time, with or without cause, upon written notice and Valmont shall have the same privilege." In the recent case of *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980), we stated the rule to be that in the absence of a promise on the part of the employer that the employment should continue for a period of time that is definite or capable of determination, such employment relationship is terminable at the will of the employer as it constitutes an indefinite hiring. We also held in *Mau* that the general rule is that when the employment is not for a definite term and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause he chooses, without incurring liability. It is clear from the specific provisions of the contract of employment of Feola, as well as from the established case law in Nebraska, that Valmont had a perfect right to terminate Feola's employment

and acted within its legal rights in so doing, which the record in this case reveals was done as a result of economic necessity in the reduction of the work force of the company; and plaintiff's contentions to the contrary, as contained in his third amended petition, that he was discharged without "good cause," is clearly without merit.

It is clear that Feola's employment was terminated by the company as of November 26, 1976. It is also clear from the specific provisions of the bonus plan that in order to be eligible for the bonus, Feola had the burden of proving that he was an administrative employee of Valmont on December 25, 1976. By virtue of the stipulation entered into between the parties, there is no dispute that he was an administrative employee of Valmont prior to November 26, 1976. We must, therefore, next consider his status as an employee between November 26, 1976, and February 4, 1977, at which time his benefits under the severance policy ceased and he entered upon the duties of his new employment. The essential question to be determined is whether his participation in the company's severance pay policy after his notice of termination had the effect of extending his employment to and past December 25, 1976.

Plaintiff relies heavily upon the case of *Kruzer v. Giant Tiger Stores*, 39 Ohio Misc. 129, 317 N.E.2d 70 (1974), in support of his contention that he was "on the payroll" as of December 25, 1976. In *Kruzer*, the plaintiff was a former employee of the defendant seeking profit-sharing benefits for 1968. The profit-sharing plan in that case expressly required that to qualify for participation a person must be "in the employ" of the employer on the particular employer's anniversary date, which was specified to be the last day of the particular "plan year." The plaintiff in that case was told on December 6, 1968, that his services were being terminated; but he was, however, paid "final checks and severance pay," representing

the amount of compensation the plaintiff would have been entitled to receive for services through January 4, 1969. The court in *Kruzer* held that the mere continued payment of the equivalent of plaintiff's regular salary constituted the keeping of the plaintiff "in the employ" until the critical anniversary date of the bonus plan, the court stating: "There is no question that the employer here intended, as a voluntary act, to maintain the plaintiff on the payroll until after the first of January, and, therefore, he was in the employ of the defendant on the anniversary plan date of the defendant, although he performed no services." *Id.* at 135, 317 N.E.2d at 74. In his brief on appeal, the plaintiff states that the court in *Kruzer* noted that extensive research failed to disclose any cases directly on point. However, in Shepardizing the *Kruzer* case, we have been able to locate a very recent case taking the opposite view from *Kruzer*, and whose language, reasoning, and statements of law are persuasive. That case is *Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 287 N.W.2d 720 (1980), which case involved an action by an employee to recover an executive bonus where the executive had been discharged for a good cause. The facts involved in *Compton* are similar to those in the instant case, except that in *Compton*, as was also true in *Kruzer*, the employee performed no services for his employer after the date of his discharge. However, the law discussed by the court in *Compton* is pertinent and helpful to a decision in this case. In *Compton*, the Supreme Court of Wisconsin held that his employment ended on the date of discharge for purposes of the employer's rule requiring the executive to be employed at the end of the fiscal year in order to be eligible for the bonus, and the fact that the executive received severance pay for the period ending on the last day of the fiscal year did not extend his employment for purposes of the bonus plan. In its opinion, the court stated at 621-23, 287 N.W.2d at 724-25: "The issue is whether

he was employed by Shopko during this period so as to make him eligible for an executive bonus payment under company rules and policies. Counsel seems to argue that because Compton is not eligible for unemployment compensation benefits, he must be an employee of Shopko. In any event, the Unemployment Compensation Act, in contrast to its definition of 'unemployment,' also defines 'employment' as 'service . . . performed by an individual for pay.' Sec. 108.02(5)(a), Stats. The purpose of the Unemployment Compensation Act is to 'cushion the cruel blow of unemployment,' *Salerno v. John Oster Mfg. Co.,* 37 Wis. 2d 433, 441, 155 N.W.2d 66 (1967); to minimize the loss of income from unemployment, *Kessler v. Industrial Comm.,.* 27 Wis. 2d 398, 401, 134 N.W.2d 412 (1965); and to mitigate economic loss to a worker, *Milwaukee Transformer Co. v. Industrial Comm.,* 22 Wis. 2d 502, 511, 126 N.W.2d 6 (1964). If a person is receiving income in the form of severance pay, he has no need for unemployment compensation; the purposes for which unemployment compensation was established are being accomplished by severance pay.

"Severance pay, by definition, means compensation given to an employee upon the severance of his employment relationship with his employer. Contrary to the trial court's conclusion, severance pay does not extend the employment period, but terminates it.

"The general effect of severance pay is discussed in *Annotation, Construction and effect of severance or dismissal pay provisions of employment contract or collective labor agreement,* 40 A.L.R.2d 1044, 1045 (1955):

""'Dismissal compensation may be defined as the payment of a specific sum, in addition to any back wages or salary, made by an employer to an employee for permanently terminating the employment relationship primarily for reasons beyond the control

of the employee." Such compensation, more recently often referred to as "severance pay," is usually associated with a termination of the employment relationship for reasons primarily beyond the control of the employee; its purpose is to assure a worker whose employment is terminated funds to depend upon while he seeks another job. . . .' (Footnotes omitted.)

"The term 'severance pay' is defined in *Republic Steel Corp. v. Maddox*, 275 Ala. 685, 689, 158 So. 2d 492, 494 (1963), reversed on other grounds, 379 U.S. 650 (1965), as follows:

"'Severance pay, by its very definition, means compensation due an employee, upon the severance of his employment status with the employer. He must accept his discharge as final before any claim for severance pay can be made. A payment of severance pay by the employer and the acceptance of the same by the employee would, in our opinion, be the complete manifestation of the termination of the employment relationship. A claim for severance pay could never arise during the employment relationship of the parties. . .'

"It has also been stated that severance pay is a form of compensation for the termination of the employment relation primarily to alleviate the consequent need for economic readjustment. *Mace v. Conde Nast Publications, Inc.*, 155 Conn. 680, 683, 237 A.2d 360, 361 (1967); *Adams v. Jersey Central Power & Light Co.*, 21 N.J. 8, 13, 14, 120 A.2d 737, 740 (1956). Severance pay is accumulated compensation for past services. *Botany Mills, Inc. v. Textile Workers Union*, 50 N.J. Super. 18, 30, 141 A.2d 107, 113 (1958); *Mace v. Conde Nast Publications, Inc.*, *supra*, at 683, 237 A.2d at 361; *Owens v. Press Publishing Co.*, 20 N.J. 537, 546, 120 A.2d 442, 446 (1956)."

The court also had this to say with reference to the *Kruzer* case relied upon by plaintiff in this action: "Compton places considerable reliance on *Kruzer v. Giant Tiger Stores, Inc.*, 39 Ohio Misc. 129, 317

N.E.2d 70 (1974). This is a county court case and concerns an employee's rights under pension and profit sharing plans. We do not consider it persuasive authority for the proposition that severance pay paid to a discharged employee on the date of discharge extends employment beyond the date of discharge." *Id.* at 623-24, 287 N.W.2d at 725.

In its opinion the court also stated:

"The trial court in the instant case found that the discharge of Compton was for good cause attributable to the employer. This finding is not challenged on appeal, and thus, the cases cited are not applicable. It has been held that where an employee was discharged for good cause prior to distribution of the proceeds of a general bonus plan, the discharged employee was not entitled to participate in the bonus plan. *Molburg v. Hunter Hosiery, Inc.,* 102 N.H. 422, 158 A.2d 288 (1960); *Croskey v. Kroger Co.,* 259 S.W.2d 408 (Mo. App. 1953); *Watwood v. Potomac Chemical Co.,* 57 N.J.E. 631, 42 A.2d 728 (1945). See: *Annotation, Rights and Liabilities as between employer and employee with respect to general bonus or profit-sharing plan,* 81 A.L.R.2d 1066 (1962).

"The contract in this case required Compton to be employed at the end of the fiscal year, February 22, 1975. Since he was not employed by Shopko at that time, he was not entitled to receive a bonus for the 1974-75 fiscal year." *Id.* at 627, 287 N.W.2d at 727.

We also note that in Black's Law Dictionary 1232 (5th ed. 1979) the term "severance pay" is defined as: "Payment by an employer to employee beyond his wages on termination of his employment. Generally, it is paid when the termination is not due to employee's fault and many union contracts provide for it."

In his appeal to this court, plaintiff has contended that, contrary to the finding of the trial court, the bonus plan was not a gratuity but rather was a unilateral contract enforceable by the plaintiff. Since, as we have demonstrated, Valmont was perfectly

within its rights in terminating Feola's employment in response to economic problems in the division, the fact of Feola's termination makes moot any question as to whether the bonus plan was a gratuity or a unilateral contract, since Feola did not satisfy the conditions precedent necessary to be entitled to the bonus. As previously stated in *Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 623, 287 N.W.2d 720, 725 (1980): "A payment of severance pay by the employer and the acceptance of the same by the employee would, in our opinion, be the complete manifestation of the termination of the employment relationship. A claim for severance pay could never arise during the employment relationship of the parties. . ." While plaintiff contends that at least he was "on the payroll" on December 25, 1976, since he was receiving checks for severance pay, we note that the bonus plan specifically provides that payment will be made only to *eligible participants* who are on the payroll on December 25, 1976. The plan, in defining "eligibility for participation," specifically covers *"[a]ll administrative employees* who are not included under another type incentive plan." (Emphasis supplied.) This clearly indicates that to be entitled to a bonus, the applicant must be an employee. As a matter of fact, the plan requires that he be an "administrative employee" on December 25, 1976. As stipulated, it is clear that Feola was an administrative employee up to November 26, 1976; but we conclude that on that date his status as an administrative employee terminated and he obtained a new status as a "separated employee" under the terms of the severance pay policy, the stated purpose of which was principally to afford terminated employees an opportunity to search for new employment and to receive a certain amount of income during that period to support them in their endeavors.

In connection with the effect of an employer's discretionary determination of whether to pay a bonus, see, *Parrish v. General Motors Corporation*, 137

So. 2d 255 (Fla. App. 1962); *Mosow v. National Lock Co.*, 119 Ill. App. 2d 232, 255 N.E.2d 500 (1970); and Annot., 43 A.L.R.3d 503 at 531-32 (1972). We conclude from a review of the terms of defendant's bonus plan and severance pay policy, as well as the evidence presented in the record of this case, that the decision as to whether or not a bonus would be paid was one within the discretion of the president and board of directors of Valmont who, in their discretion, lawfully terminated Feola's employment on November 26, 1976; and we determine that he was not an administrative employee of Valmont on December 25, 1976. In announcing his decision following the trial of this matter, the trial judge stated: "I don't think the contract is ambiguous. I find as a matter of law that the plaintiff was not an administrative employee on December 25, 1976; that as a result, he was not an eligible participant under the term of the Administrative Bonus Plan of 1976 by reason of his termination and severance from employment effective on November 26, 1976." The material facts of this case are essentially undisputed. The law is well settled that in such a situation the case only presents questions of law for the court, and the findings of the trial court are essentially conclusions of law. See *Compton v. Shopko Stores, Inc., supra.* We agree with the conclusions of the trial court and conclude that the trial judge did not err in directing a verdict for the defendant on its motion for directed verdict and his dismissal of plaintiff's petition.

One further matter should be mentioned. Plaintiff also assigns as error the refusal of the trial court to admit the evidence of his witness, Nancy K. Meier, whose testimony was proffered for the purpose of impeaching certain statements made by another witness of the plaintiff, Tom Whalen, the personnel manager of Valmont. The trial court apparently ruled that such impeachment testimony was not permissible during plaintiff's case-in-chief, but could

only be used, if at all, as a rebuttal testimony. The court also based its ruling on the fact that the witness Nancy Meier was not endorsed on the list of witnesses to be called as determined during the pretrial conference. It is, of course, well settled that a witness may be called for impeachment purposes, even though the name was not listed among the witnesses to be called by a party in establishing its case-in-chief. However, we believe the court erred in its conclusion that the impeachment must be done during rebuttal evidence, and was not permissible during the case-in-chief. Be that as it may, however, the plaintiff made an offer of proof as to the nature of the testimony which would have been given by the witness Nancy Meier. The offer of proof failed to show that witness Meier would have testified that she was receiving severance pay on or before December 25, 1976, as was the plaintiff, when she received a bonus from the company nor that she was employed in the division for which Mr. Whalen had responsibility. The offer failed to include a statement that she was a "separated employee" on that date, which would indicate she was not in a separated status, but was still regularly employed in an administrative capacity. We conclude that the error, if any, was without prejudice to plaintiff's case, and that the assignment of error is without merit.

In view of what we have stated above, the judgment of the trial court must be, and hereby is, affirmed.

AFFIRMED.