ARMEDA MALONE AND STEPHEN KRANTZ, APPELLEES, V.
AMERICAN BUSINESS INFORMATION, INC., APPELLANT.
647 N.W.2d 569

Filed June 21, 2002. No. S-01-227.

Patrick M. Flood, of Hotz, Weaver, Flood & Breitkreutz, for appellant.

Michael P. Dowd, of Dowd & Dowd, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Appellees, Armeda Malone and Stephen Krantz, filed suit against their former employer, American Business Information, Inc. (ABI), now known as Info USA, Inc., to recover commissions owed pursuant to the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue

1998). A jury awarded Malone and Krantz their requested amounts of commission, and the district court entered judgment pursuant to the jury verdicts. ABI now appeals.

## I. FACTUAL BACKGROUND

Malone and Krantz began working for ABI as national account managers in 1998. Joseph Szczepaniak, president of ABI's consumer CD-ROM division, induced Malone to leave her previous employment by offering a more favorable commission agreement, despite a lower base salary at ABI. Similarly, ABI recruited Krantz with an offer of a lucrative commission agreement.

Upon joining ABI, Malone and Krantz signed identical 1998 sales commission plans (1998 Commission Plan). Both Malone and Krantz testified that ABI's tiered commission structure depended upon the net quantities shipped from ABI to distributors, based on the distributors' point of sale (POS) reports or direct sales. The 1998 Commission Plan provided, in pertinent part:

| Annual Paid Revenue | Commission % |
|---|---|
| 0 - $800,000 | 2% |
| $800,000 - $1,200,000 | 8% |
| over $1,200,000 | 15% |

1. All commissions are based on paid sales only.

2. All commissions are paid on a quarterly basis and are calculated on cumulative paid year-to-date sales as of the end of each quarter.

3. All earned commissions will be paid at the end of the following month.

4. Commissions are based on performance and any disputes will be settled by senior management.

5. Commission and bonus plans are subject to change at management's discretion.

6. For team commissions or bonuses, the assigned team members are subject to change.

Malone and Krantz testified that ABI did not advise them that it could retroactively modify the commission agreement without notice; Malone and Krantz each understood that the plan only allowed for prospective change following notice.

For the first two quarters of 1998, Malone and Krantz reported directly to Marci Vitous, ABI's director of retail sales. William Hippen, vice president of retail sales, supervised Vitous. Vitous wrote Hippen a letter dated March 9, 1998, requesting confirmation that "commissions for the tier 1 group, including myself, would be paid based on the data collected from the distributors' POS reports." Hippen replied via e-mail: "Yes, this is correct." ABI accordingly paid commissions for the first quarter of 1998 to Malone and Krantz with no underpayment. Szczepaniak, the president of Malone and Krantz' division, signed each commission report.

In accordance with this method of calculation, Hippen sent an e-mail to a potential sales representative during the second quarter of 1998, describing how ABI calculated commissions: "[A]ll commissions in the retail channel are paid on net 'sell-in' at distribution and/or direct. Distribution 'sell-in' information is derived from POS reports provided by each distributor."

Hippen testified that at the end of the second quarter, Malone's and Krantz' calculated commissions included reserves. Hippen incorporated reserves into the commission calculations by estimating that a number of products would be returned and stated that he implemented reserves so the employees receiving commissions would not be overpaid and have to repay ABI if the products were returned. Malone testified that she was not informed until September 1998 that reserves would be withheld from her commissions.

ABI's CD-ROM division, in which Malone and Krantz worked, underwent management changes in 1998: Vitous and Hippen left the division; Steven Malone became director of sales, replacing Vitous and Hippen; and Steven Malone reported to Bruce Lowry, who became vice president of the consumer products division, replacing Szczepaniak.

Malone and Krantz accepted and cashed their second quarter commission checks. Malone testified that in September 1998, she received a memorandum and second quarter commission calculations from Lowry and discovered that her second quarter commission included reserves. After receiving Lowry's memorandum in September, Malone and Krantz made inquiries with Steven Malone, their direct supervisor, about reconciling their

second-quarter commissions and paying their third-quarter commissions; they did not receive commission calculation sheets for the third or fourth quarter of 1998.

Steven Malone testified that he initially compiled the third-quarter commission numbers based on POS reports; however, upon presenting these figures to Lowry, Steven Malone testified that Lowry told him "you got to learn how to fuck these people." Lowry denied making that statement. Steven Malone testified that after finding that the commission figures were unacceptable to Lowry, he "bumped the level of reserves" held against the national account managers, utilizing several variables, some of which he found "ridiculous."

Steven Malone reassured Malone and Krantz in November 1998 that the underpayment of their second-quarter commissions and their third-quarter commissions were forthcoming, but Malone and Krantz did not receive these commissions within 30 days of the end of the quarter as required by the 1998 Commission Plan. Around December 14, 1998, Lowry advised Steven Malone that ABI would pay commissions due from the third and fourth quarters of 1998; on December 15, Lowry informed Steven Malone that the commissions would not be approved and that a new model to determine commissions would be implemented.

On December 15, 1998, Steven Malone informed Malone that commissions were going to be changed, and Malone objected to a retroactive change to the commission plan. On December 16, Malone sent a letter to the executive chairman of Info USA, formerly known as ABI, demanding her third-quarter commission. Krantz sent a similar e-mail to the executive chairman and other ABI management on December 17, demanding payment of his third-quarter commissions.

Internal auditor Julie Engel testified that Steven Malone asked her around January 1999 to recalculate commissions based on paid sales, i.e., cash ABI actually received from its sales. Engel recalculated commissions of all national account managers, including Malone and Krantz, for all four quarters of 1998. Lowry sent Krantz a letter on December 23, 1998, claiming that Krantz owed ABI $15,197.73 after the recalculation of commissions for the third quarter.

Malone and Krantz no longer work for ABI. They both claim that ABI owes unpaid commissions from 1998, and each calculated their respective amounts based on POS reports provided by ABI. Krantz adduced evidence that ABI owed him $108,802 in unpaid commissions. Malone presented evidence that ABI owed her $75,350 in unpaid commissions.

## II. PROCEDURAL BACKGROUND

Malone and Krantz filed an amended petition against ABI to recover damages owed under the Nebraska Wage Payment and Collection Act, § 48-1228 et seq. Malone and Krantz alleged that ABI failed and refused to pay commissions earned in 1998, in violation of the contractual 1998 Commission Plan. Malone and Krantz prayed for, inter alia, the commissions for 1998 to which they are entitled and reasonable attorney fees in an amount not less than 25 percent of the total recovery.

At trial, ABI moved for a directed verdict at the close of Malone and Krantz' case in chief, and again at the close of its own case; the district court overruled both motions. The jury found in favor of Malone for the sum of $75,350, and in favor of Krantz for the sum of $108,802. The district court entered judgment accordingly and awarded Malone and Krantz attorney fees pursuant to § 48-1231. ABI now appeals.

## III. ASSIGNMENTS OF ERROR

ABI assigns, restated, that the district court erred (1) in failing to grant ABI's motion for a directed verdict, (2) in instructing the jury that the 1998 Commission Plan was ambiguous as a matter of law, and (3) in failing to instruct the jury on what constitutes an unenforceable promise.

## IV. STANDARD OF REVIEW

■ When a motion for a directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Steele v. Sedlacek*, 261 Neb. 794, 626 N.W.2d 224 (2001), *modified* 262 Neb. 1, 626 N.W.2d 224.

■ Whether the jury instructions given by a trial court are correct is a question of law. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002).

## V. ANALYSIS

### 1. DIRECTED VERDICT

ABI assigns, first, that the district court erred in failing to grant a directed verdict in favor of ABI. ABI argues that the 1998 Commission Plan upon which Malone and Krantz base their claims cannot be interpreted to provide an enforceable contractual right and that Malone and Krantz did not present evidence upon which a jury could award reasonably certain damages.

■ A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001), *modified* 262 Neb. 663, 641 N.W.2d 624. The party against whom a motion for directed verdict is made is entitled to all reasonable inferences deducible from the evidence. *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001). Even if all reasonable inferences from the evidence are resolved in favor of Malone and Krantz, ABI argues that the district court should have entered a directed verdict because its management could, as a matter of law, change the commission plan at its discretion—retroactively and without notice.

ABI claims that paragraphs 4 and 5 of the 1998 Commission Plan clearly and unambiguously reserve to ABI the right to resolve all disputes concerning commissions and the right to change, alter, or repeal the 1998 Commission Plan. In *Feola v. Valmont Industries, Inc.*, 208 Neb. 527, 304 N.W.2d 377 (1981), this court upheld the trial court's decision that an employee was not entitled to a bonus after termination of employment based on its interpretation of the bonus plan and management's discretion. ABI claims that based on *Feola*, the 1998 Commission Plan at issue provides for a discretionary and gratuitous bonus for which there is no contractual right of recovery.

The employee in *Feola, supra*, was lawfully terminated and placed on a severance pay plan prior to the scheduled receipt

of his yearly bonus. Although the bonus plan in *Feola* contained language allowing for the discretion of the employer's board of directors in paying bonuses and this court concluded that the board had discretion to deny the employee's bonus, *Feola* does not control the instant case. The plan in *Feola* unambiguously provided that a terminated employee under a severance pay plan would not be entitled to receive a bonus. Therefore, notwithstanding this court's discussion of the board's discretion to dispense bonuses, the employee would not have received a bonus whether or not the board had discretion. See *id.*

ABI cites cases from other jurisdictions in support of its position. In *Parrish v. General Motors Corporation*, 137 So. 2d 255 (Fla. App. 1962), cited with approval in *Feola, supra*, an employee brought suit against a former employer to collect a bonus allegedly due to him under a bonus plan. Under the plan, management had discretion to determine bonus amounts and modify or suspend the plan. The *Parrish* court concluded that the plan at issue "[partook] of gratuity while lacking essential elements of contractual obligation. . . . [A]n employee [under the plan] is at all times charged with knowledge that a bonus award may be granted or withheld . . . at the discretion of the employer." 137 So. 2d at 258. See, also, *Mosow v. National Lock Co.*, 119 Ill. App. 2d 232, 255 N.E.2d 500 (1970) (concluding that contingent compensation plan at issue reserved determination of compensation to management's discretion); *Automatic Sprinkler Corp. v. Anderson*, 243 Ga. 867, 869, 257 S.E.2d 283, 285 (1979) (concluding that because compensation plan stated that " 'award of any direct incentive compensation is entirely within the discretion of the corporation,' " contract was unambiguous and employee had no absolute right to deferred incentive compensation); *Goodpaster v. Pfizer, Inc.*, 35 Wash. App. 199, 665 P.2d 414 (1983) (stating that employer's promise to pay bonus was illusory and finding no evidence that promise to pay bonus was definite and certain).

Malone and Krantz argue, however, that the 1998 Commission Plan does not constitute a discretionary and gratuitous bonus plan, but instead bases accrued sales commissions upon individual sales performance. Malone and Krantz assert that the 1998

Commission Plan constituted a contract that could not be (1) altered without notice or (2) retroactively altered.

Although Malone and Krantz acknowledge that an employer may change an original compensation agreement, they argue that an employer cannot retroactively modify commission agreements to deny accrued commissions. See, e.g., *Nichols v. Waterfield Financial Corp.*, 62 Ohio App. 3d 717, 719, 577 N.E.2d 422, 423 (1989) (stating that "the terms and conditions of an at-will contract can be *prospectively* changed without consideration" (emphasis supplied)). Malone and Krantz are correct in their assertion.

 Under either an at-will employment relationship or a contractual arrangement that allows employer modification at will, an employer can alter the terms of compensation, provided the employer has given notice of the alteration to the employee and the employee thereafter continues his or her employment. However, even if there is an at-will employment relationship, the employer cannot unilaterally alter the amount of compensation for work that has already been rendered or for commissions that have already accrued. See 27 Am. Jur. 2d *Employment Relationship* § 54 (1996). Simply put, an employer cannot modify a written commission agreement retroactively or without notice to its employees. See, *Martin v. Golden Corral Corp.*, 601 So. 2d 1316 (Fla. App. 1992) (reversing and remanding summary judgment to determine if employee had notice and acceptance of modification to at-will employment contract); *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex. 1986) (stating that employee must have knowledge and notice of proposed modification when employer modifies at-will employment agreement). See, also, 27 Am. Jur. 2d, *supra*, §§ 23, 26, and 54.

We conclude that the district court did not err in refusing to direct a verdict in favor of ABI. Authority cited by ABI concerning gratuitous bonuses and illusory promises enforceable at management's discretion does not apply to the 1998 Commission Plan. The 1998 Commission Plan granted compensation based on individual sales performance, not mere gratuity. Further, unlike the cases cited by ABI, elements of contractual formation are present under the 1998 Commission Plan: ABI offered its commission plan to entice Malone and Krantz to

work for ABI, and Malone and Krantz accepted that plan as part of their employment.

Although ABI management retained some discretion with regard to the 1998 Commission Plan, that discretion (with respect to accrued commissions) may not be exercised retroactively, without notice to the employees. A directed verdict would not be appropriate in this case and cannot be entered as a matter of law.

ABI also claims that Malone's and Krantz' estimations of their commissions due resulted in a jury award of speculative damages. We disagree. Malone and Krantz offered sufficient evidence as to the amounts ABI owed them and evidence that they both disputed the reserves excluded from their second quarter commissions. Thus, the district court did not err in refusing to grant ABI a directed verdict.

## 2. JURY INSTRUCTIONS

### (a) Instruction on Ambiguity of Commission Plan

ABI assigns, second, that the district court erred by instructing the jury that the 1998 Commission Plan was ambiguous as a matter of law. In instructions Nos. 2 and 7, the district court instructed the jury that the 1998 Commission Plan was ambiguous; ABI specifically objected to these instructions. In its brief, ABI relies on its arguments that the 1998 Commission Plan is unambiguous, as discussed above.

Whether a document is ambiguous is a question of law, and an appellate court considering such a question is obligated to reach a conclusion independent of the trial court's decision. *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001).

We conclude that several portions of the 1998 Commission Plan are ambiguous. The jury heard evidence that definition of the terms "paid sales" in paragraph 1, upon which commissions were to be based, meant POS reports to some ABI employees and money received from actual sales to other ABI employees. Commissions based on "performance" and disputes resolved by "senior management" in paragraph 4, and "subject to change at

management's discretion" in paragraph 5, are also ambiguous, as revealed by conflicting evidence adduced at trial. Additionally, the 1998 Commission Plan ambiguously states in paragraph 1 that "commissions are based on paid sales only" and in paragraph 4 that "commissions are based on performance."

Whether the jury instructions given by a trial court are correct is a question of law. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002). We conclude that based on our interpretation of the law with regard to the 1998 Commission Plan and our determination of the plan's ambiguity, the district court did not err in (1) instructing the jury that the plan was ambiguous as a matter of law and (2) allowing the jury to resolve the ambiguities from the evidence adduced at trial.

### (b) Failure to Instruct on Unenforceable Promise

Finally, ABI assigns that the district court erred in failing to include ABI's requested jury instruction, which read: "An agreement that depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise." While certainly a unique argument, ABI is apparently claiming that this principle of law, set forth in *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998), would have permitted the trier of fact to conclude that the 1998 Commission Plan could not be enforced to allow Malone and Krantz to claim any specific amounts.

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Springer, supra*. On appellate review, jury instructions must be read together; they must be read conjunctively, rather than separately in isolation. *Morris v. Rochester Midland Corp.*, 259 Neb. 870, 612 N.W.2d 921 (2000).

The district court instructed the jury that Malone and Krantz had the burden of proof and that all parties to a lawsuit are entitled to the same fair and impartial consideration, be they individual or corporation. The court further instructed that having found the plan to be ambiguous, the jury must consider both parties'

interpretations and constructions of the 1998 Commission Plan. Thus, the jury could have found in favor of ABI's interpretation of the 1998 Commission Plan. The jury did not accept ABI's interpretation. However, no prejudice against ABI occurred in the court's failure to include ABI's proposed instruction. We, therefore, conclude that the district court did not err in failing to instruct the jury with regard to unenforceable illusory promises.

## VI. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.