IN RE TRUST CREATED BY CARL LYMAN CEASE, SR.,
AND IRENE M. CEASE, SETTLORS.
PAULETTE S. GLOVER, APPELLANT, V. ROBERT LEAZENBY,
PERSONAL REPRESENTATIVE, APPELLEE.
677 N.W.2d 495

Filed April 9, 2004. No. S-02-1447.

Robert C. McGowan, Jr., of McGowan & McGowan, for appellant.

Julie A. Frank, of Frank & Gryva, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

In this declaratory judgment action, the Douglas County Court found that a revocable inter vivos trust jointly created by Carl Lyman Cease, Sr., and Irene M. Cease (Cease Trust) had been effectively terminated by Carl's execution of a document entitled "Termination of Trust." Paulette S. Glover, a residuary beneficiary of the Cease Trust, appeals from the order of the county court.

## SCOPE OF REVIEW

■ Whether a document is ambiguous is a question of law, and an appellate court considering such a question is obligated

to reach a conclusion independent of the trial court's decision. *Malone v. American Bus. Info.*, 264 Neb. 127, 647 N.W.2d 569 (2002).

## FACTS

Carl and Irene were married in either 1961 or 1962. This marriage was the second for each of them. Carl had five children from his previous marriage, one of whom is Dawn Blume. Glover was the only child from Irene's previous marriage.

On June 27, 1994, Carl and Irene created a revocable inter vivos trust. None of the parties involved in this matter challenge the terms of the Cease Trust or whether it was legitimately created, nor do they challenge which assets were conveyed into the trust. Among these assets were the following: a personal residence located in Omaha, Nebraska; certain items of tangible personal property; two motor vehicles; and bank accounts held on deposit in an Omaha federal credit union.

Carl and Irene were named cotrustees of the Cease Trust. Glover was nominated by the Cease Trust to be the successor trustee and was the sole residuary beneficiary of the trust.

Article III of the Cease Trust provided in relevant part:

> Each of the Settlors reserves the right at any time . . . to amend . . . or terminate this trust . . . by an instrument in writing signed by either of the Settlors and delivered to the Trustee in the lifetime of either of the Settlors . . . . If this trust or any trust created herein is revoked in its entirety, the revocation shall take effect upon the delivery of the required writing to the Trustee . . . .

Irene died on July 22, 2001. Sometime in the months following Irene's death, Carl moved from Omaha to Kansas. In August 2001, Carl and Blume met with Brian Carroll, an attorney practicing in Marysville, Kansas, to review the estate planning documents that Carl had executed in Nebraska. Carroll testified that Carl had concerns regarding the manner in which the trust property was to be distributed. Carl's concerns allegedly stemmed from the fact that Blume, who was providing Carl with 24-hour care, would receive nothing under the Cease Trust. Steven Gunderson, the attorney who prepared the Cease Trust in 1994, testified that Carroll contacted him in July or August 2001 and

requested copies of the documents that Gunderson had prepared for Carl.

At Carl's request, Carroll drafted a will, a power of attorney, a living will, and a document entitled "Termination of Trust," which document we will refer to hereafter as "exhibit C." Exhibit C, which was executed by Carl on September 24, 2001, stated:

I, CARL LYMAN CEASE, SR., a resident of Geary County, Kansas, do hereby resign from my position as TRUSTEE of the Cease Revoca[b]le Trust . . . dated June 27, 1994. This resignation is pursuant to Article III of said trust agreement. This resignation is intended to terminate said trust, from and after the date indicated below. This resignation is being done voluntarily and by my own free will. Furthermore, the ownership of all assets of the Trust are [sic] hereby returned to myself as Settlor of the Trust.

Carl executed his will on November 6, 2001. In this document, the residential property that had previously been conveyed to the Cease Trust was bequeathed to Blume. The rest of Carl's property was bequeathed in various proportions to his children and to Glover. Glover did not challenge the validity of this will.

Carl died on December 3, 2001, and a petition for probate of his will was filed on February 11, 2002. Glover filed her petition for declaratory judgment on the same date. The petition asked the county court to declare that the Cease Trust was still valid, that Glover had succeeded Carl as trustee, and that the property conveyed to the trust still belonged to the trust.

The county court found that the greater weight of the evidence supported a finding that exhibit C did in fact terminate the Cease Trust. Glover filed a motion for new trial, which the court overruled. Glover filed a timely notice of appeal.

## ASSIGNMENTS OF ERROR

Glover assigns the following restated errors: (1) The county court erred in admitting parol evidence to explain, vary, or contradict exhibit C; (2) the court erred in concluding that Carl's execution of exhibit C terminated the Cease Trust; (3) the court erred in concluding that Glover did not become successor trustee of the Cease Trust; and (4) the court erred in failing to

find that there was no delivery of the required notice of termination of trust to Glover in her capacity as successor trustee.

## ANALYSIS

We first consider whether the county court erred in determining that exhibit C terminated the Cease Trust. Glover alleged that exhibit C was effective only insofar as it served as a valid resignation of Carl from his position of trustee of the Cease Trust. In her motion in limine and throughout trial, Glover asserted that exhibit C was not susceptible to two interpretations. She argued that this document could be interpreted only as a resignation by Carl of his position as trustee and not as a termination of the trust.

Glover's argument is based upon examination of only the first sentence of exhibit C. The argument assumes a very specific order of events in which execution of the first sentence of exhibit C effectively removed Carl from his position of trustee. Glover asserts that this resignation caused her to immediately become the successor trustee of the Cease Trust. She claims that the attempt to terminate the trust set forth in the third sentence of exhibit C failed because article III of the trust required that a notice of termination be delivered to the successor trustee. She asserts that there was no evidence that she, as successor trustee, was given notice of the termination of the trust during Carl's lifetime as required by article III.

The personal representative of Carl's estate argues that the rules of construction require that exhibit C be read as a whole. This assertion correlates with the requirement that a document must be construed as a whole, and if possible, effect must be given to every part thereof. See *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003).

In interpreting a document, a court must first determine, as a matter of law, whether the document is ambiguous. See *Fraternal Order of Police v. County of Douglas*, 259 Neb. 822, 612 N.W.2d 483 (2000). Whether a document is ambiguous is a question of law, and an appellate court considering such a question is obligated to reach a conclusion independent of the trial court's decision. *Malone v. American Bus. Info.*, 264 Neb. 127, 647 N.W.2d 569 (2002). Upon reviewing exhibit C, we conclude that the document is not ambiguous. When exhibit C is construed

as a whole, and not sentence by sentence, the only reasonable interpretation is that Carl sought to have the document serve as a termination of the trust.

In connection with her claim that the county court erred in concluding that exhibit C terminated the Cease Trust, Glover argues that the court erred in admitting parol evidence regarding exhibit C. Glover argues that since exhibit C was not ambiguous, parol evidence was not admissible.

Unless a document is ambiguous, parol evidence cannot be used to vary its terms. See *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000). The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts the terms of a written agreement. *Id.* A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous. *Bank of Burwell v. Kelley*, 233 Neb. 396, 445 N.W.2d 871 (1989); *Olds v. Jamison*, 195 Neb. 388, 238 N.W.2d 459 (1976).

At trial, certain testimony was admitted over objection concerning the execution of exhibit C. Specifically, testimony was elicited by both parties regarding Carl's intentions at the time the document was executed. Before trial, Glover had filed a motion in limine seeking to prohibit the personal representative from offering extrinsic parol evidence at trial regarding exhibit C. The county court first declared that the motion was denied, but then stated that it would reserve judgment until after it had heard all of the evidence.

The admissibility of parol evidence arose next during Carroll's testimony. Carroll was asked on direct examination what Carl's concerns were with regard to the trust at the time of their first meeting. Glover's attorney objected that the testimony was attempting to explain or vary the language of exhibit C, which he characterized as unambiguous. This objection was overruled. Carroll answered that Carl was confused as to the contents of the trust. Later, Carroll was asked whether it was his understanding that Carl wished to make changes to his estate planning in order to benefit Blume. An objection by Glover's attorney was overruled. Carroll answered that Carl wanted to change his estate planning to benefit Blume.

Carroll was then asked why exhibit C was prepared in a manner that might be considered inconsistent. Again, an objection by Glover's attorney was overruled. Carroll answered that the document was intended to serve as "the final resignation and termination" of the trust pursuant to article III of the trust. When Carroll was asked about Carl's intent when he executed exhibit C, counsel for Glover objected on unspecified grounds. This objection was sustained.

Glover's attorney later raised the issue of Carl's intent during Carroll's cross-examination. Counsel asked whether Carl intended to resign as trustee. In answering, Carroll stated that "[i]t was his intention to terminate this Trust. And based on the research that I have done, we felt that — I felt that it would be best for him to resign also at the time the Trust is terminated." Counsel for Glover also asked Carroll whether exhibit C was intended to amend the Cease Trust. Carroll responded that the document was not intended to amend the trust.

On redirect, counsel for the personal representative asked Carroll if exhibit C was intended to act only as a resignation of Carl's position as trustee. This question was objected to on the grounds that the document speaks for itself and that parol evidence is therefore impermissible. This objection was sustained. Counsel for the personal representative responded by indicating that opposing counsel had been allowed to ask Carroll about Carl's intent with respect to exhibit C. The judge replied by stating: "I have been sustaining the objection both ways and I will continue to do so. This Court will determine what this document means."

■ In the absence of fraud, mistake, or ambiguity, the only competent evidence was the written document. We have concluded that exhibit C is not ambiguous. Therefore, to the extent that parol evidence concerning exhibit C was admitted, it was error, but the error was harmless. In a trial to the court, the presumption is that the trial court considered only such evidence as is competent and relevant, and the reviewing court will not reverse such a case because evidence was erroneously admitted where there is other material, competent, and relevant evidence sufficient to sustain the judgment. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999).

■ The interpretation of the language of a document is a matter of law. See *Smith v. Smith,* 246 Neb. 193, 517 N.W.2d 394 (1994). Whether the Cease Trust was terminated by exhibit C is therefore a question of law that we decide independently of the decision of the county court. See *id.*

In its final order, the county court found that the greater weight of the evidence adduced at trial supported a finding that exhibit C served to terminate the Cease Trust prior to Carl's death. However, the interpretation of exhibit C and the determination of whether it successfully terminated the trust were questions of law, not fact.

We conclude as a matter of law that exhibit C terminated the Cease Trust. Article III of the trust provided that the trust could be terminated by either settlor at any time by an instrument in writing signed by the settlor and delivered to the trustee during the lifetime of the settlor. Exhibit C was a written document signed by a settlor (Carl) that terminated the trust. Since Carl was also the trustee, termination of the trust occurred when he signed exhibit C on September 24, 2001.

Finally, Glover assigns as error the purported failure of Carl to deliver notice of termination of the Cease Trust to Glover in accordance with article III of the trust. This assignment of error is also without merit. As noted above, Carl's execution of exhibit C served to effectively terminate the trust. As such, notice to Glover was not required, since at the time the trust was terminated, Carl was the trustee. The only delivery of notice that was required by article III was by Carl to himself.

■ Although the county court based its decision upon the weight of the evidence, the decision to be made by the court was one of law and not of fact. Since exhibit C was not ambiguous, parol evidence regarding the document should not have been admitted. However, the court reached the correct result. A proper result will not be reversed merely because it was reached for the wrong reason. *Wasikowski v. Nebraska Quality Jobs Bd.,* 264 Neb. 403, 648 N.W.2d 756 (2002).

CONCLUSION

For the reasons stated herein, the decision of the Douglas County Court is affirmed.

AFFIRMED.