LINDA KNUTSON, APPELLEE, v. SNYDER INDUSTRIES, INC., A NEBRASKA CORPORATION, APPELLANT.

436 N.W.2d 496

Filed March 3, 1989.   No. 87-591.

Terry K. Barber for appellant.

Anne E. Winner, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and BURKHARD and HANNON, D. JJ.

HANNON, D.J.

On November 5, 1984, the plaintiff, Linda Knutson, was hired as a supervisory employee of the defendant, Snyder Industries, Inc., for an annual salary payable biweekly. She resigned on August 20, 1985, and the defendant refused to pay her a bonus she claimed to be entitled to under an incentive plan. She sued in the county court and, after a bench trial, was awarded judgment against the defendant for $1,338.06 plus costs and $350 for attorney fees under Neb. Rev. Stat. § 48-1231 (Reissue 1988). The defendant appealed, and the district court affirmed and awarded an additional $350 for attorney fees in the district court. We affirm.

On January 2, 1985, the defendant announced in writing an "Incentive Compensation Plan" for its supervisory employees. The officers of defendant explained to the employees that profits were down, that the salary of certain supervisory personnel would be cut from 10 to 20 percent, and that if a certain level of profitability was reached each month during the year, the lost wages would be restored on a month-to-month basis. The plan was unpopular, and a second plan was proposed and adopted by the defendant.

The second plan was promulgated at a meeting held on January 11, 1985, and confirmed by a letter dated January 15, 1985. In that plan, the salary of supervisory employees in the plaintiff's category would be reduced 5 percent, but if a certain profit level was reached for the fiscal year ending July 31, 1985, the lost salary would be restored and the employees would receive a bonus of that much more.

The parties stipulated that the profit level requiring the payment of a full bonus to the plaintiff was reached. The defendant refused to pay the bonus solely on the ground that the plaintiff was not employed at the time the bonus was to be paid, although she was employed at the end of the fiscal year.

The memorandum of January 2, 1985, said nothing about when any yearend bonus would be paid. The memorandum of January 15, 1985, stated the timeframe when the bonus would

be computed: "At the end of the fiscal year (July 31) we will have our regular, audited statement of profit and loss. These will be done in September . . . ." Neither statement said anything about continued employment being a condition to receiving the bonus.

Everyone understood the bonus would not be finally computed or paid until sometime in September. The plaintiff and another former employee testified that they did not hear anyone at any meeting say the bonus would only be paid to those persons who were still employed when the bonus was paid. An owner of the defendant and a person still employed by it testified management did announce that employment on the date of payment was a condition to receiving the payment.

The trial judge specifically found that he accepted the plaintiff's version of the January meetings and that continued employment was not a term of the original incentive plan. This case is a law case tried to the court without a jury, and this court will not disturb its findings unless they are clearly wrong; furthermore, this court will view the evidence in a light most favorable to the prevailing party. *Hahn v. Weber & Sons Co.*, 223 Neb. 426, 390 N.W.2d 503 (1986).

In part, the defendant relies upon a letter to Knutson dated August 9, 1985, in which the defendant stated that her pay was being returned to the preplan level, that preliminary information indicated she would be entitled to the bonus, and that it would probably be paid at the second payday of September to "those participants currently employed on the payment date." This communication came long after any agreement was made, and after any performance required by the plaintiff was complete, and could not have changed the terms of the agreement made in January.

The defendant maintains that even under the plaintiff's version there was not agreement on the point, and therefore employment on the date of disbursement was an implied term of the bonus agreement. The defendant relies upon the cases of *Sinnett v. Hie Food Products, Inc.*, 185 Neb. 221, 174 N.W.2d 720 (1970), and *Feola v. Valmont Industries, Inc.*, 208 Neb. 527, 304 N.W.2d 377 (1981), to support this position. In the *Sinnett* case, the issue was whether the wrongful discharge of an

employee on the last day of the bonus year deprived him of a bonus he had otherwise earned. In the *Feola* case, the issue was whether an employee drawing severance pay was still employed for purposes of being entitled to a bonus. Neither case is applicable to the case at hand.

Perhaps the trial court could have found an implied provision in the agreement of January that each employee must be employed on the date the bonus was distributed to be entitled to it, but there is no authority for a proposition that the trial court was required to find such an implied provision. If the purpose of a bonus plan is to retain long-term employees, such an implication might be required, or at least justified, but the evidence in this case would support, if it did not compel, a finding that the purpose of the bonus plan was to improve productivity.

Section 48-1231 of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissues 1984 & 1988), provides that if wages are not paid within 30 days and the employee secures a judgment, and if the employee has employed an attorney, the employee "shall be entitled to recover . . . an amount for attorney fees assessed by the court which fees shall not be less than twenty-five percent of the unpaid wages." The statute also provides for an additional attorney fee of not less than 25 percent if the employee prevails on appeal. The county court and the district court each allowed $350 as an attorney fee. The defendant maintains the bonus sued for was not wages, and therefore the plaintiff is not entitled to an allowance for attorney fees.

Section 48-1229(3) (Reissue 1984) provides: "Wages shall mean compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." The defendant argues that the above definition does not include nonroutine benefits. The plaintiff argues the bonus is a fringe benefit.

Webster's New Universal Unabridged Dictionary 208 (2d ed. 1983) defines "bonus" as "(3) extra compensation beyond an amount agreed upon; an extra payment or consideration given

as a reward or an inducement," and "fringe benefit" as "a payment other than wages or salary made to an employee, as in the form of a pension, vacation, insurance, etc." *Id.* at 734. Under the above definitions, a bonus may or may not be wages under the statutory definition, depending upon whether or not the bonus is an inducement or a reward, that is, whether the employer and employee agreed to it beforehand. The trial court necessarily found they had agreed, and the record supports that finding.

It is difficult to imagine a more comprehensive definition of wages than the one contained in § 48-1229. In it the wages must be (1) compensation for labor or services, (2) previously agreed to, and (3) the conditions stipulated must have been met. In finding for the plaintiff, the county court necessarily found that the bonus had been previously agreed to and that the stipulated conditions had been met. The plaintiff is entitled to an award of attorney fees in the trial court and both appellate courts in at least the amount of 25 percent of the award. The plaintiff is allowed $750 as attorney fees in this court.

AFFIRMED.