JOHN MORRIS, APPELLEE AND CROSS-APPELLANT, V.
ROCHESTER MIDLAND CORPORATION,
APPELLANT AND CROSS-APPELLEE.

612 N.W. 2d 921

Filed June 30, 2000. No. S-99-337.

D.C. Bradford, of Bradford, Coenen & Welsh, for appellant.

Frederick S. Cassman, of Abrahams, Kaslow & Cassman, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

John Morris brought suit under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue 1998), against his former employer, Rochester Midland Corporation (Rochester), to recover commissions allegedly due for contracts on file at the time of his termination of employment. The district court overruled Rochester's motion for directed verdict, and the jury returned a verdict for Morris. We affirm.

## BACKGROUND

Morris worked as an industrial chemical salesperson for Rochester in its water energy division. He earned a commission of 40 percent of the gross profit from his sales. Morris solicited contracts with schools, hospitals, large food processing and manufacturing companies, and other entities in need of water treatment. His duties entailed calling on prospective customers, testing water samples, and determining their chemical needs.

Morris had two methods of selling chemicals. An ordinary sale involved the sale of chemicals by the drum or by the package, for which Morris would be paid a commission when the chemicals were shipped. Alternatively, a "team contract" required Morris to determine the customers' needs for a 1-, 3-, or 5-year period. In the case of a team contract, Morris would determine the appropriate amount of chemicals for the contract period. Rochester and the customer would then commit to a long-term contract for a set price. The customer would be billed on a monthly, quarterly, or semiannual basis. Chemicals would be delivered to the customer as needed, rather than on a corresponding monthly, quarterly, or semiannual basis. If a customer needed more chemicals during the life of the contract than Morris had projected, the extra chemicals would be provided

without further charge. Under a team contract, Morris received his commission when the customer paid, rather than at the time of shipment.

At the time of Morris' termination of employment, he had 11 accounts on which he had not been paid commission. Of those 11 accounts, 9 were team contracts, which committed Rochester to future delivery of chemicals for the respective contract periods. At trial, Morris argued that he was entitled to full commission on all 11 accounts. Rochester argued that Morris was only entitled to commission on chemicals that had been shipped at the time of his termination of employment. The jury found in favor of Morris and awarded him damages in the amount of $142,797.

## ASSIGNMENTS OF ERROR

Rochester assigns as error the district court's failure to direct a verdict on the issue of Morris' right to commissions on future orders and inclusion of the term "and contracts" in jury instruction No. 7.

Morris assigns, on cross-appeal, the district court's error in failing to assess either an amount equal to the judgment or two times the amount of the judgment pursuant to § 48-1232.

## STANDARD OF REVIEW

■ With regard to the overruling of a motion for directed verdict made at the close of all the evidence, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Ratigan v. K.D.L., Inc., ante* p. 283, 609 N.W.2d 376 (2000).

## ANALYSIS

### MOTION FOR DIRECTED VERDICT

Morris brought suit against Rochester under the Nebraska Wage Payment and Collection Act, which provides in part that "[a]n employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court." § 48-1231. Under § 48-1229(4), "[w]ages shall include

commissions on all orders delivered and all orders on file with the employer at the time of termination of employment less any orders returned or canceled at the time suit is filed." Because Morris worked for Rochester as a straight commission salesperson, the main issue at trial was whether he had "orders on file" at the time of his termination of employment.

Whether or not there were orders on file at the time of Morris' termination of employment was a question of fact. In light of the conflicting evidence that the parties introduced at trial, the district court properly submitted the issue to the jury. In particular, Morris introduced evidence that an agreement between Rochester and the Omaha Public Schools (OPS) was for a period of 5 years. On direct, Morris testified that the contract with OPS was for 5 years. In addition, exhibit 8, an internal Rochester document, refers to the agreement with OPS as a "5 Year Water Energy Contract." Exhibit 9, an internal Rochester newsletter, mentions Morris' achievement on "the contract with a major school district for their Water Energy needs, getting a five-year agreement worth over $700,000." In addition, Morris read into evidence the deposition testimony of Ronald A. Cappello, Rochester's regional manager, in which Cappello referred to the OPS agreement as a 5-year contract. Morris also read into evidence the deposition testimony of Michael Gerrard Carlin, Rochester's regional distributor manager, in which Carlin admitted that Rochester considered the OPS agreement to be a 5-year contract.

In contrast, Rochester introduced evidence to show that the agreement with OPS was for 1 year with a renewal option, rather than for 5 years. Exhibit 7, the invitation to Rochester to bid for OPS' business, states that the "[c]ontract shall be for a period of one year at a fixed price with four, one-year renewals on the agreement of both parties."

The invitation to bid, however, did not constitute a written contract between Rochester and OPS. Rather, the invitation to bid was issued by OPS to all water treatment companies that wished to bid on OPS' water treatment specifications. The record does not contain a written response to OPS' invitation to bid. Morris testified, however, that OPS' invitation to bid and the bid that he turned in had some subtle differences. On cross-

examination, Morris explained that OPS' invitation to bid was used as a guideline, but it was not followed exactly.

In light of the foregoing evidence introduced by the parties, it is clear that reasonable minds could draw different conclusions as to whether there were "orders on file" at the time of Morris' termination of employment. See § 48-1229(4). We determine, therefore, that the district court did not err in overruling Rochester's motion for directed verdict. The issue of whether there were orders on file was a factual issue for the jury to decide. Rochester was not entitled to have the issue decided as a matter of law, and we conclude that the district court did not err in denying its motion for a directed verdict.

### JURY INSTRUCTIONS

Jury instruction No. 7 informed the jury in part that to recover, Morris had to prove by a greater weight of the evidence "[t]hat as of the date of the termination of this employment, there was due and owing to [Morris] from [Rochester] commissions on orders delivered and contracts and orders on file with [Rochester], no part of which has been paid." Rochester argues that in light of the statutory definition of "wages," the district court erred by including the language "and contracts" in jury instruction No. 7. See § 48-1229(4).

On appellate review, jury instructions must be read together; they must be read conjunctively, rather than separately in isolation. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000). Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Id.*

Even if inclusion of the term "and contracts" in instruction No. 7 had prejudicially harmed Rochester, an issue which we do not decide, instruction No. 10 contained language that was substantially similar to the contested language in instruction No. 7. Instruction No. 10 provided:

> A person who is employed as a sales representative and whose compensation is based on a commission on sales procured from customers is entitled to be paid commissions on all orders delivered and *all orders or contracts on*

*file* with the employer at the time of termination of his employment, less any orders returned or cancelled at the time suit is filed.

(Emphasis supplied.)

However, Rochester neither assigned nor argued any error as to instruction No. 10. Therefore, any error by the district court in including the term "and contracts" in instruction No. 7 was harmless; the jury received substantially the same instruction in No. 10, which Rochester did not appeal.

### MORRIS' CROSS-APPEAL

On cross-appeal, Morris contends that the district court erred in failing to assess either an amount equal to the judgment or two times the amount of the judgment pursuant to § 48-1232. Section 48-1232 provides:

> If an employee establishes a claim and secures judgment on such claim under section 48-1231: (1) An amount equal to the judgment may be recovered from the employer; or (2) if the nonpayment of wages is found to be willful, an amount equal to two times the amount of unpaid wages shall be recovered from the employer. Any amount recovered pursuant to subdivision (1) or (2) of this section shall be placed in a fund to be distributed to the common schools of this state.

We have previously held that under § 48-1232, it is discretionary with the court whether to order the employer to pay to the common school fund an amount equal to the judgment. *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 428 N.W.2d 899 (1988). Section 48-1232 should not be invoked where there is a reasonable dispute as to the fact that wages are owed or as to the amount of the wages. *Id.*

The district court correctly declined Morris' request to have Rochester pay an amount equal to or double the amount of the judgment. There were factual issues as to whether Morris had procured contracts and, if he had, whether those contracts constituted orders on file.

### CONCLUSION

The parties introduced conflicting evidence on issues of fact. Therefore, the district court did not err by overruling

Rochester's motion for summary judgment. If the district court erred by giving instruction No. 7, the error was harmless and not prejudicial. Finally, the district court did not abuse its discretion by denying Morris' request for requiring Rochester to pay under § 48-1232. Therefore, we affirm.

AFFIRMED.